UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

AKEEM WATSON,

                Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CR-0287-23 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On June 23, 2017, Akeem Watson pleaded guilty to Count Sixty-Five of the Superseding Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Akeem Watson is hereby sentenced to 12 months and one day of incarceration, 2 years of supervised release, criminal forfeiture as set forth in the Plea Agreement and Forfeiture Order, and a $100.00 special assessment.

## BACKGROUND

On July 15, 2015, the United States filed a seventy-five count Superseding Indictment against twenty-three defendants, including Akeem Watson ("Defendant"). *See* Superseding Indictment, ECF No. 48. On June 23, 2017, Defendant pleaded guilty to Count Sixty-Five of the Superseding Indictment, which charged a Bank Fraud Conspiracy. *See* Plea Agreement ¶ 1, ECF No. 451.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I.    Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. When a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . .

. the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. § 3553(a) Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on March 5, 1992 and is the sole child born to the consensual union of Patrick Blair and Marsha Elaine Watson. Presentence Investigation Report ("PSR") ¶ 70, ECF No. 488. Defendant was raised by his mother in a single-parent household under lower-middle-income circumstances. *Id.* ¶ 71. Defendant has always had close ties to his mother. *Id.* ¶ 70. Defendant reported that his father died in a car accident in 1995. *Id.* Defendant's mother divulged in a subsequent interview Defendant's father committed suicide when Defendant was an infant. *Id.* Defendant encountered neither abuse nor neglect during his childhood. *Id.* ¶ 71. Defendant has no siblings, and he has never been married nor fathered children. *Id.* ¶ 72. He has

resided with his mother in a one-bedroom apartment in Brooklyn, New York since birth. *Id.* ¶ 73. Defendant's mother remains supportive. *Id.* ¶ 70.

Defendant nearly drowned in a pool when he was ten years old. *Id.* ¶ 71. After the incident, Defendant fell into a coma and was placed on a ventilator for three months. *Id.* When Defendant awoke, doctors discovered he had sustained significant brain damage, which limited both his cognitive abilities and overall mental well-being. *Id.* Defendant also suffered from aspiration pneumonia in connection with the near-drowning. *Id.* ¶ 76. Defendant's medical reports reveal he has been diagnosed with brain anomaly/deformation, insomnia, learning defect, and muscle spasms. *Id.* ¶ 75.

Defendant is also delayed because of the near-drowning incident. As a result, his academic career was spent in special education classes. *Id.* ¶¶ 88. Defendant was enrolled at Boys & Girls High School in Brooklyn, New York from 2006 to 2008. *Id.* In the 11th grade, he withdrew from school because he lost interest. *Id.*

In the summer of 2004, when tested, Defendant obtained a full-scale Intelligence Quotient ("IQ") of 60. Def. Sentencing Mem. ("Def. Mem.") at 4, ECF No. 661. A re-evaluation conducted by school psychologists in 2007 reported that, Defendant, who was a 15-year-old seventh-grade student, continued to demonstrate significant academic delays and cognitive deficits despite receiving the recommended special education services. *Id.* He scored below the first percentile in reading, mathematics, and written languages. *Id.*

When tested in 2015 pursuant to a psychoeducational evaluation prepared by NY forensics, he obtained a full-scale IQ of 66. PSR ¶ 87, ECF No. 488. His basic spelling skills tested well below average, placing him at the fourth-grade level. Similarly, his decoding, comprehension, and math skills placed him at the second-grade level. *Id.* The evaluation noted

3

Defendant demonstrated extremely poor skills with respect to general cognitive function, and it identified his visual/perception and visual/spatial functioning, verbal comprehension, verbal reasoning, and vocabulary as in the low extreme. *Id.*

Due to his mental disability, Defendant has never been gainfully employed. *Id.* ¶ 91. Rather, Defendant's health ailments have qualified him for Supplemental Security Income since 2008. *Id.* ¶ 92.

On July 22, 2015, Defendant was released on a $75,000 unsecured bond with Pretrial Services reporting requirements. *Id.* ¶ 4. Defendant's bond conditions were modified on September 1, 2015 to include participation in Pretrial Services' Special Option Services ("SOS") Program, which required Defendant to adhere to a curfew with location monitoring. *Id.* The location monitoring condition was removed on February 27, 2017. *Id.*

The SOS Program is an alternative to incarceration program that provides educational support for defendants in pending cases. Def. Mem. at 3, ECF No. 661. Defendant has been enrolled in SOS for nearly three years, since the time of his arrest. *Id.* Defendant has reportedly made great progress in the SOS Program. *Id.* at 4; PSR ¶ 71, ECF No. 488. Defendant is required to undergo routine mental health treatment. PSR ¶ 81, ECF No. 488. He has received weekly psychotherapy for treatment of depression since August 2015, attending treatment as required and making a sincere effort to reach his treatment goals. *Id.*

Defendant began attending bi-weekly literacy classes in 2016 to improve his reading abilities. *Id.* ¶ 89. Furthermore, Adult Career and Continuing Education Services – Vocational Rehabilitation deemed Defendant eligible to attend vocational classes in November 2017. *Id.* ¶ 90. He has attended these classes since June 2018 and has reported to Pre-Trial Services weekly. Def. Mem. at 3, ECF No. 661. Since entering the SOS Program, Defendant has

engaged in efforts to secure a job placement that accommodates his needs. PSR ¶ 91, ECF No. 488.

Defendant began smoking marijuana at age sixteen or seventeen. *Id.* ¶ 84. He was unable to quantify the specific amount of marijuana he smoked on any given occasion. *Id.* On July 22, 2017, while under pretrial supervision for the instant offense, Defendant was arrested for possession of marijuana, Percocet, and drug paraphernalia with intent to use. *Id.* ¶ 66. According to the arrest and court records, police approached a car being driven by one of Defendant's associates while investigating reports that another of Defendant's associates phoned in and sought to pick up a fake drug prescription. *Id.* Police stated they detected the smell of marijuana and removed Defendant and his associates from the vehicle. *Id.* A subsequent search of the vehicle revealed a container of marijuana, a vapor smoking pipe containing liquid marijuana, and a black scale. *Id.* During a search of Defendant's person at the police precinct, police found a bag containing a powder form of Percocet in Defendant's left shoe. *Id.*

Defendant advised he entered the car to take a ride to Walgreen's, and he did not know the individual who sought to pick up the fake prescriptions. *Id.* Defendant also stated a doctor prescribed Percocet to him in February 2017 for an ankle injury. *Id.* He removed a pill from the bottle to have the medicine on hand in case his ankle began to hurt. *Id.* A urine specimen collected on July 24, 2017 after Defendant's arrest tested positive for codeine. A urinalysis conducted by the Probation Department on August 3, 2017 tested negative for the presence of illicit substances. *Id.* ¶ 85.

On August 17, 2011, at the age of nineteen, Defendant was arrested for criminal trespassing in the second degree and was sentenced to three years of probation. *Id.* ¶ 61. The court also entered a five-year order of protection against him and imposed a $250.00 fine, which

5

he paid. *Id.* Defendant committed the instant offense while under probation for the criminal trespassing offense. *Id.* ¶¶ 61, 63. On May 17, 2012, at the age of 20, Defendant was arrested for criminal possession of marijuana in the fifth degree. *Id.* ¶ 67. The charge was dismissed on May 17, 2013. *Id.*

Regarding the instant offense, Defendant was a member of Shoota Gang ("SG") and the Eight Trey Gangsta Crips ("Eight Trey"). *Id.* ¶ 10. He was also an associate of the Outlaw Gangsta Crips ("OGC"). *Id.* SG was an offshoot of the OGC, which included members and associates of the OGC as well as members and associates of other gangs, including Eight Trey, Bosses in Business, and the Bloods. *Id.* ¶¶ 4-5. Members and associates of the OGC have engaged in drug trafficking, fraud, firearms trafficking, and promoting prostitution, and they have committed acts of violence, including murder, attempted murder, robbery and assault, as well as other crimes. *Id.* The purposes of the OGC included enriching the gang; promoting and enhancing the gang's prestige, reputation, and position among rival gangs; preserving and protecting the gang's power, territory, and criminal ventures; maintaining fear of the gang in their victims and rivals; and concealing the gang's criminal activity from law enforcement. *Id.* ¶ 6. Defendant was not connected with the violent acts listed and charged in the indictment. *See id.* ¶¶ 4-5.

Defendant was arrested on July 16, 2015 at his residence in Brooklyn, New York, and he made no post-arrest statements. *Id.* ¶ 39. According to the Government, Watson and defendants Derrick Bienaime, Davon Brown, Shawn Newland, Cordero Passley, and Gabriel Patterson, together with others, committed bank fraud through the use of fraudulent checks. *Id.* ¶¶ 1, 39. According to the Government, the total loss to the victim banks exceeded $550,000. *Id.* ¶ 39. Per USSG § 1B1.3(a)(1)(B), Defendant is accountable for the entire loss, as the conduct of each

of the defendants involved in these acts was in furtherance of the jointly undertaken criminal activity. There is no evidence to suggest Defendant managed, supervised, or led any other individuals as part of the instant offense. *Id.* According to Defendant's sentencing memorandum, Defendant "was always accompanied by other members of the group during his participation in the conspiracy and was directly responsible for only a small portion of the stolen funds." Def. Mem. at 2, ECF No. 661. Defendant avers he "received no payment for his actions in furtherance of the bank fraud." *Id.*

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant's crime caused more than $550,000 worth of loss to the victim banks and helped to fund unlawful gang activity. The Court recognizes the seriousness of this offense and acts accordingly. It seeks to deter Defendant from further criminal activity and encourages him to sever his ties to SG, Eight Trey, and OGC. The Court further seeks to deter other gang members by sending the message that a life of crime carries a risk of punishment that outweighs any potential gains. Finally, this Court's sentence also considers and recognizes Defendant's family support, mental disabilities, and willingness to complete vocational trainings.

## C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of Bank Fraud Conspiracy, in violation of 18 U.S.C. §§ 1349 and 1344. Plea Agreement ¶ 1, ECF No. 451. He faces a maximum term of imprisonment of thirty years. 18 U.S.C. § 1344. Defendant also faces: a maximum term of supervised release of five years to follow any term of imprisonment, 18 U.S.C. § 3583(b), (e); a maximum fine of $1,000,000.00, 18 U.S.C. § 1344; mandatory restitution in the full amount of each victim's losses as determined by the Court, 18 U.S.C. §§ 3663A, 3664; and a mandatory special assessment of $100.00, 18 U.S.C. § 3013. If Defendant violates a condition of supervised release, he may be sentenced up to three years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. §§ 3583(b), (e).

On July 18, 2017, this Court entered a forfeiture order pursuant to 21 U.S.C. § 853(p) requiring Defendant, who consented to the entry of forfeiture in his plea agreement, to forfeit one million dollars and zero cents by the date of his sentencing. *See* Order of Forfeiture, ECF No. 453. The Court imposed this forfeiture judgment jointly and severally together with money judgments imposed on any of Defendant's convicted co-conspirators. *Id.* ¶ 1.

## D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

Guideline § 2X1.1 applies to violations of 18 U.S.C. § 1349. *See* United States Sentencing Commission, *Guidelines Manual*, § 2X1.1 (Nov. 2018) ("USSG"). Guideline § 2X1.1(a)—which covers conspiracies, attempts, and solicitations—instructs the applicable base offense level shall be "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." *Id.* Guideline § 2B1.1(a)(1) applies to violations of the base offense, bank fraud under 18 U.S.C. § 1344, when such offenses carry maximum sentences of twenty or more years and sets a base offense level of seven. *Id.* § 2B1.1(a)(1).

As noted above, the instant offense resulted in more than $550,000 of loss, resulting in a 14-level increase pursuant to Guideline § 2B1.1(b)(1)(h).

Defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG § 3E1.1(a). Because the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty, the offense level is decreased by one additional level. USSG § 3E1.1(b). All parties agree Defendant should receive a three-point reduction for acceptance of responsibility. This would bring Defendant's total adjusted level to eighteen.

In Defendant's plea agreement, the Government estimated that the Defendant would receive a one-level reduction "for a global resolution pursuant to U.S.S.G. § 5K2.0" if the covered defendants pleaded guilty by June 23, 2017. Plea Agreement ¶ 2, ECF No. 451; PSR ¶ 112, ECF No. 488. Not all the listed Defendants pled guilty by June 23, 2017, but all defendants have now pled guilty. Because all defendants have pled guilty, all parties agree Defendant should receive this additional one-point reduction, bringing Defendant's total adjusted level to seventeen.

Defendant's criminal convictions result in a subtotal criminal history score of one. PSR ¶ 61, ECF No. 488. However, because Defendant committed the instant offense while under the probation term for criminal trespassing in the second degree, two points are added under USSG §4A1.1(d). This brings Defendant's total criminal history score to three, establishing a criminal history category of II.[1] USSG Ch. 5, Part A.

In its Guidelines calculation, Probation arrives at a total adjusted offense level of 18. PSR ¶ 112, ECF No. 488. With a criminal history category of II and a total offense level of 18, the Guidelines imprisonment range is 30 to 37 months. USSG Ch. 5, Part A.

Probation acknowledges the plea agreement called for an additional one-level reduction in the advisory guideline range for the purposes of global resolution. PSR ¶ 112, ECF No. 488. Both the Government and Defendant agree the additional one-level reduction should be included in the sentencing calculus and assumed Probation included the reduction in its calculus as well. *See* Gov't Mem. at 2, ECF No. 665; Def. Mem. at 3, ECF No. 661. This reduction would bring Defendant's total adjusted offense level to 17, resulting in a range of 27 to 33 months. The Government asks the Court to impose a term of imprisonment within that range. The defense "has no objection to these advisory guideline computations." Defense Mem. at 2, ECF No. 661.

Both the defense and Probation request the Court to impose a below-guidelines sentence pursuant to Policy Statement § 5K2.13. *Id.* at 4-8; PSR ¶ 111, ECF No. 488. Probation suggests this Court impose a sentence of time served and two-years supervised release, with special

---

[1] The Plea Agreement contemplated a criminal history category of I, Plea Agreement ¶ 2, and Defendant's Memorandum assumed that criminal history category I would still be applicable without providing a basis for such reasoning. Def. Mem. at 3, ECF No. 661. The Government and Probation agree the appropriate criminal history category is II. Gov't Sentencing Mem. ("Gov't Mem.") at 2, ECF No. 665.

10

conditions. Probation Sentencing Recommendation at 1-2, ECF No. 479-1. The defense does not specify the sentence sought but suggests this Court should impose a non-custodial sentence based on Defendant's diminished capacity pursuant to Policy Statement § 5K2.13 and Defendant's progress in the SOS program. Defense Mem. at 2, ECF No. 661.

Per the Guidelines, Defendant may also be sentenced to a term of supervised release of two years to five years, USSG § 5D1.2(a)(1) and a fine of between $6,000.00 and $1,000,000.00, *id.* §§ 5E1.2(c)(3)-(4), (h)(1). The Guidelines further suggest Defendant is ineligible for probation. *Id.* § 5B1.1(b)(1).

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5). As noted above, the defense and Probation in part request the Court to impose a below-guidelines sentence pursuant to Policy Statement § 5K2.13, which provides:

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.
>
> However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110 or 117, of title 18, United States Code.

As the Second Circuit has held, "to qualify for a departure on the basis of diminished capacity, a defendant must prove by a preponderance of the evidence that she committed the

11

offense 'while suffering from a significantly reduced mental capacity' and that there exists a 'causal link' between the diminished capacity and the charged offense." *United States v. Miller*, 178 F. App'x 70, 72 (2d Cir. 2006) (citing *United States v. Valdez*, 426 F.3d 178, 184 (2d Cir. 2005). Furthermore, "[t]he standard ... for granting a downward departure on the basis for diminished mental capacity is not that the defendant recognizes the difference between right and wrong, which may negate intent, but rather that his diminished mental capacity significantly *impaired* his judgment or his ability to understand the wrongfulness of his actions." *Valdez*, 426 F.3d at 184 (emphasis in original).

Though Defendant's significantly reduced mental capacity must be a contributing cause of the offense, it need not be the sole cause of the offense. *See, e.g., United States. v. Harris*, 192-CR-455 (CSH), 1994 WL 683429, at *4 (S.D.N.Y. 1994); *see also United States v. Soliman*, 954 F.2d 1012, 1014 (5th Cir. 1992)). Still, per the letter of Guideline § 5K2.13, the significantly reduced mental capacity must have *contributed substantially* to the commission of the offense. *See United States v. Qualls*, 613 F. App'x 25, 30 (2d Cir. 2015). Courts may consider both mental and psychiatric conditions in reviewing a request for downward departure under § 5K2.13. *United States v. Santa*, 05-CR-649, 2008 WL 2065560, at *6 (E.D.N.Y. 2008) (Weinstein, J.) (citing *United States v. Liu*, 267 F. Supp.2d 371, 372 (E.D.N.Y. 2003) (Weinstein, J.) (departing downward based on the defendant's gambling addiction)).

This Court provides an account of Defendant's drowning accident and his resulting mental disabilities above. Consistent with this account, Probation notes:

> The defendant has a brain injury and he is mentally disabled. As such, since it appears that the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a downward departure may be warranted by Policy Statement 5K2.13.

12

PSR ¶ 111, ECF No. 488. Probation further notes "[t]he mitigating factor noted above (severe cognitive defects due to traumatic brain injury as a youth) has been considered and a sentence below the advisory guideline range has been recommended in accordance with 18 U.S.C. § 3553(a). Probation Sentencing Recommendation at 3, ECF No. 479-1.

Similarly, counsel for Defendant argues downward departure would be appropriate because: (1) Defendant's mental state was not caused by drugs or intoxicants; (2) Defendant committed a non-violent crime; and (3) Defendant's "agreement to commit bank fraud was a decision made by an impaired mind." Def. Mem. at 7, ECF No. 661. The defense argues Defendant's "reduced mental capacity curtailed his ability to make judgments and rationally perceive events," and his "decision making processes were blinded by his intellectual deficits." Id. at 8. Further, due to Defendant's diminished capacity, the defense argues Defendant "did not fully understand the possible consequences of his actions . . . . His acquaintances manipulated him into participating in the plot and he naively complied." Id. Ultimately, Defendant's "participation in the bank fraud conspiracy was generated by his desire to be 'one of the boys' and his more worldly co-conspirators['] ability to exploit his weakness." Id. at 2.

The Government emphasizes Defendant's membership in dangerous gangs and his participation in a scheme that helped fund those gangs. Gov't Mem. at 3, ECF No. 665.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant is one of twenty-three defendants in this case, and the Court will craft a unique sentence for each defendant. For the reasons stated in this order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7). This factor is applicable in Defendant's case. *See* 18 U.S.C. § 3663. Since the instant offense occurred after April 24, 1996, restitution is mandatory pursuant to 18 U.S.C. § 3663A and Guideline § 5E1.1(a)(1). The victim banks, however, have yet to respond to requests for affidavits of loss. As a result, the specific amounts owed to the individual victims is unknown and restitution cannot be determined with accuracy. PSR ¶ 108, ECF No. 488. Nevertheless, this Court, per 18 U.S.C. § 3664(d)(5), reserves its right to hold an evidentiary hearing within 90 days after sentencing to determine the specific amount owed to the victims.

### CONCLUSION

A sentence of 12 months and 1 day of incarceration, to be followed by 2 years of supervised release, criminal forfeiture as set forth in the Plea Agreement and Forfeiture Order, and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court expressly adopts the factual findings of the Presentence Investigation Report and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/WFK

_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: January 30, 2018
      Brooklyn, New York